**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

NETVISION RESOURCES, INC.,
    2201 Cooperative Way, Suite 600
    Herndon, VA 20171,

       Plaintiff,

v.

**RAMAKANTH PEECHARA**,
    25597 Rocky Gap Court
    Chantilly, VA 20152,

      Defendant.

Civil Action No.   1:19-cv-189

## COMPLAINT

Plaintiff NetVision Resources, Inc. ("NVR"), by counsel, files this Complaint against Defendant Ramakanth Peechara ("Peechara"), and states as follows:

## INTRODUCTION

1.     This case involves the misappropriation of NVR's corporate assets, including NVR trade secrets and highly confidential business information contained on NVR computers, by Peechara, NVR's former President and former member of NVR's Board of Directors.

2.     In order to pay off a mortgage that had come due on a property owned by one of Peechara's side businesses, Peechara, without the knowledge of NVR management, skimmed client checks from NVR's mailbox, deposited them in a secondary account, and wrote a $500,000.00 check from that account to benefit himself.

3.     NVR, upon realizing Peechara's misappropriation of funds from NVR's corporate account, terminated Peechara's employment on June 23, 2017.

1

4.       Instead of leaving NVR quietly, Peechara absconded from the company with at least two laptop computers owned by NVR, which contained, among other things, NVR's proprietary trade secrets, highly confidential business information, and attorney-client communications.

5.       Peechara also stole NVR's corporate records and documents, including NVR's corporate seal, original records of NVR's corporate meeting minutes, bylaws, and Articles of Incorporation, as well as NVR's stock certificates and stock ledger.

6.       Despite repeated requests to return NVR's stolen assets, Peechara has refused.

7.       Instead, Peechara has continued to access and use NVR's laptop computers and company information since termination of his employment.

8.       Accordingly, NVR files this Complaint against Peechara to pursue remedies for his: (i) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g); (ii) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1); (iii) conversion of NVR's laptops and confidential information; (iv) conversion of corporate documents and things; (v) conversion of corporate funds; (vi) fraud; (vii) unjust enrichment; (viii) breach of contract; (ix) breach of fiduciary duty; (x) Virginia statutory business conspiracy, Va. Code § 18.2-499; and (xi) common-law conspiracy.

## PARTIES

9.       Plaintiff NVR is an information technology ("IT") services company that is incorporated under the laws of Virginia and is headquartered in Herndon, Virginia.

10.      Defendant Ramakanth Peechara is the former President of NVR.  He is a resident and citizen of Virginia, and he lives in Chantilly, Virginia.

## JURISDICTION AND VENUE

11.    Peechara is subject to personal jurisdiction in this Court, because he resides in the Commonwealth of Virginia, and he has conducted business related to this case in or about Fairfax County, Virginia.

12.    This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. This dispute raises claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Defend Trade Secrets Act, 18 U.S.C. § 1836, both of which are laws of the United States. Further, the Defend Trade Secrets Act grants the district courts of the United States original jurisdiction of civil actions. *See* 18 U.S.C. § 1836(c).

13.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over NVR's remaining claims as those claims relate to the federal statutory claims in this action and form part of the same case or controversy under Article III of the United States.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2). Peechara is a resident of the judicial district within which this Court sits, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

## FACTS

### I.    PEECHARA'S EMPLOYMENT AGREEMENT WITH NVR

15.    NVR was established in 1999. It specializes in providing IT services and staffing to private companies and the federal government.

16.    On July 1, 2010, NVR entered into an employment agreement with Peechara. The NetVision Resources Inc. Employment Agreement ("Employment Agreement") is attached hereto as **Exhibit 1**.

17.    The Employment Agreement provided that Peechara would serve as Vice President of Operations for NVR.

18.    On or about July 1, 2010, Peechara was also elected to serve as a member of NVR's Board of Directors.

19.    On or about January 14, 2013, Peechara was elected to serve as President of NVR.

20.    In each of these positions, Peechara assumed fiduciary duties to NVR.

21.    As a consequence of his positions at NVR, and in reliance upon his representations and commitments as an officer and director of NVR, Peechara was granted access to NVR's confidential and proprietary information, trade secrets, customer lists, and business relationships.

22.    During the time of employment, Peechara agreed that he would "devote his . . . full time and effort to such employment." Employment Agreement § 2.1.  Peechara further agreed in the Employment Agreement that he "[would] not render or perform services for any other corporation, firm, entity or person which are inconsistent with the provisions of [the Employment Agreement]," Employment Agreement § 2.2.

23.    The Employment Agreement provided for payment of Peechara's salary, bonuses, benefits, and necessary expenses.  Employment Agreement §§ 3.1-3.4.

24.    The Employment Agreement contained a "Confidentiality/Nondisclosure" requirement, in which

> [Peechara] covenant[ed] and agree[d] that [Peechara] shall not, except with the prior written consent of [NVR], or except if [Peechara] is acting as an employee of [NVR], solely for the benefit of [NVR] in connection with [NVR's] business and in accordance with [NVR's] business practices and employee policies, at any time during or following the term of [Peechara's] employment by [NVR], directly or indirectly, disclose, divulge, reveal, report, publish, transfer, copy, duplicate or use, for any purpose whatsoever, any of such information which has been obtained by or disclosed to [Peechara] as a result of [Peechara's] employment by [NVR], including any of the [Protected Information] referred to in Section 5 hereof.

Employment Agreement § 4.1(a).

25.     The Employment Agreement defined "Protected Information" as including

all of the following materials and information (whether or not reduced to writing
and whether or not patentable or protectable by copyright) which [Peechara]
receives, receives access to, conceives or develops or has received, received access
to, conceived or developed, in whole or in part, directly or indirectly, in connection
with, [Peechara's] employment with [NVR] or in the course of [Peechara's]
employment with [NVR] (in any capacity, whether executive, managerial,
planning, technical, sales, research, development, engineering or otherwise) or
through the use of any of [NVR's] facilities or resources . . . .

Employment Agreement § 5.1(a).

26.     The Employment Agreement also contained a non-disparagement clause, in which

[Peechara] agree[d] to take no action and to make no statement publicly, privately,
in writing, or in the media disparaging [NVR] or its members, officers, or its
products or services, and [Peechara] agrees that [Peechara's] action (whether by
omission or commission) that harms the public or private perception of [NVR] or
its employees, members, officers, or its products or services, except as may be
required for truthful sworn testimony as may be compelled by subpoena of a court
or administrative body, will constitute a material breach of this Agreement.

27.     Peechara further agreed, by signing the Employment Agreement, that his breach

of the confidentiality or nondisparagement provisions of the Employment Agreement would

entitle NVR to "(a) a refund of all compensation for bonuses and one-half of all compensation

for salary paid to [Peechara] pursuant to this Agreement and (b) reimbursement for any and all

benefits and taxes incurred by [NVR] associated with the payment of such refunded

compensation.  Such refund and/or reimbursement shall be in addition to all other remedies

available to [NVR], including reasonable attorneys' fees and costs."  Employment Agreement

§ 10.1.

28.     As an employee of NVR, Peechara was also required to abide by the NetVision

Resources, Inc. Employee Handbook ("Employee Handbook"), last updated January 2017.  The

Employee Handbook prohibited NVR employees from improperly using or disclosing trade secrets or confidential business information.

29.     Peechara was employed by NVR pursuant to the Employment Agreement from July 1, 2010 until his termination on June 23, 2017.

**II.     PEECHARA STEALS $500,000.00 FROM NVR**

       **A.  The Bhoomi Loan**

30.     In or around March 2017, Peechara, apparently in need of quick money to pay off a financial obligation related to a separate company, began diverting NVR's corporate assets.

31.     Peechara and his wife own Bhoomi, LLC ("Bhoomi").  Upon information and belief, Peechara is a 60% owner of Bhoomi, and his wife is a 40% owner of Bhoomi.

32.     Bhoomi owns property at 4229 Lafayette Center Drive, Chantilly, Virginia, 20151.

33.     Bhoomi held a commercial mortgage on the property with PNC Bank ("PNC"), and the loan was due for refinancing in or around March 2017.

34.     Unable or unwilling to refinance the loan with PNC, Bhoomi opted to pay off the loan in full.  The total outstanding loan amount at time of pay off was $497,663.74, which Peechara paid by check, on behalf of Bhoomi, to PNC on or about May 5, 2017.

35.     Upon information and belief, Peechara used a short-term credit arrangement to pay off the Bhoomi loan, and he, Bhoomi, and a third company, Acumen Tech Resources, Inc., concocted a scheme to fulfill his obligations under the short-term credit arrangement.

       **B.  Peechara's Check Diversion Scheme**

36.     Peechara had unique knowledge of NVR's payment obligations as a result of his role as President.

37.     Beginning in or about March 2017, Peechara took control of all items related to NVR's secondary corporate account with PNC, including checks, security fob, and electronic user ids and passwords.  NVR typically used its PNC corporate account only for international transfers and kept a limited amount of funds in that account.

38.     At or around that same time, Peechara also took possession of the NVR corporate mailbox key.  While he controlled the mailbox key, Peechara began to check NVR's mailbox and sort the mail, allowing him unfettered access to the check and payments that were sent to NVR by its clients.

39.     At or around this same time, Peechara, acting in his capacity as NVR's President, instructed NVR's accounting department to suspend its monthly comparison of NVR's outstanding invoices against the checks and payments received from NVR's clients.  This prevented NVR from determining whether it had received payment for each of the invoices that it sent out.

40.     Upon receiving checks and payments in the mail, NVR's accounting department would deposit the checks in NVR's primary corporate bank account at Bank of America.

41.     But in March 2017, Peechara began selectively to withhold a subset of checks sent to NVR by its clients.  Peechara would provide a majority of the checks received in the mail to NVR's accounting department for deposit, but he would keep a subset of the checks for his own use.

42.     On May 12, 2017, Peechara then deposited twenty of the withheld checks payable to NVR, with a total of $414,281.82, in NVR's secondary corporate account at PNC, which Peechara at that point controlled.

43.    On May 24, 2017, Peechara deposited an additional eight checks payable to NVR, with a total of $81,042.54, in NVR's secondary corporate account at PNC.

44.    Peechara was able to make these deposits due to his position as President of NVR.

**C. Peechara Launders NVR's Funds Through Acumen Tech**

45.    On May 25, 2017, Peechara, in his capacity as President of NVR, wrote a check from NVR's corporate account at PNC for $500,000.00 to Acumen Tech Resources, Inc. ("Acumen Tech"), a company controlled by Peechara.

46.    After drafting the $500,000.00 check, Peechara almost immediately endorsed and deposited the $500,000.00 check on behalf of Acumen Tech.

47.    Peechara purportedly paid this amount based on invoices submitted to NVR by Acumen Tech for "consulting services" provided from February 2016 through January 2017.

48.    In fact, each of these purported invoices were prepared on or about May 25, 2017—the same day as Peechara's payment to Acumen Tech—and the invoices conveniently equaled $500,000.00.  No "consulting services" were performed by Acumen Tech.

49.    These invoices were fraudulently created by Peechara, or at his direction, to allow him to launder the $500,000.00 payment through Acumen Tech.

50.    As of May 2017,[1] Acumen Tech was a shell company, owned by Peechara and a business associate of Peechara unaffiliated with NVR.  Acumen Tech has selected Subchapter "S" status with the Internal Revenue Service, and Peechara owned a 72% share of Acumen Tech.

51.    Peechara, using his position as majority owner of Acumen Tech and Bhoomi, caused the $500,000.00 payment to Acumen Tech to be used to satisfy the short-term credit obligation that Bhoomi incurred as a result of paying of its PNC mortgage loan.

---

[1] Upon information and belief, Acumen Tech has since been disbanded.  Acumen Tech's registration as a Virginia corporation was terminated on August 31, 2018.

52.     Peechara acknowledged this scheme during a telephone conversation with one of the members of NVR's accounting department on or about Monday, June 5, 2017.  In that conversation, Peechara admitted that he had used the $500,000.00 from NVR's PNC account to pay off the Bhoomi loan.

53.     The other NVR officers and directors were not aware of Peechara's scheme and the $500,000.00 payment to Acumen Tech at the time it was made.

54.     Peechara did not inform NVR's officers and directors about a purported payment obligation to Acumen Tech, nor did he notify NVR's officers and directors of that payment before Peechara wrote the $500,000.00 check.  Thus, NVR's officers and directors were not made aware of—and thus had no opportunity to suspend—the $500,000.00 payment to Acumen Tech.

55.     NVR learned of the $500,000.00 payment to Acumen Tech only after the check had been written and deposited by Peechara.

56.     By the time NVR discovered the $500,000.00, NVR was unable to cancel the check.  Peechara had written, endorsed, and deposited the check on Acumen Tech's behalf before NVR was able to do anything to prevent the check from clearing the bank.

**III.     PEECHARA IS TERMINATED FROM NVR**

57.     After discovering what Peechara had done, NVR began the steps of terminating him.

58.     On June 23, 2017, NVR held a Board of Directors meeting and passed a resolution terminating Peechara's employment.

59.     Peechara attended a portion of the June 23, 2017 Board of Directors meeting, and he was contemporaneously provided with a Notice of Termination, requesting that he cease use of any NVR credit cards and return all NVR property, including computers, telephones,

equipment, office keys and access cards, corporate checks  and electronic key, corporate mailbox keys, as well as all corporate records and files.  Notice of Termination is attached as **Exhibit 2**.

60.     As of June 23, 2017, Peechara was no longer authorized to access NVR's proprietary and confidential information or trade secrets, and he was required to return to NVR any proprietary and confidential information or trade secrets in his possession.

61.     NVR also took steps to cut off Peechara's access to its shared electronic storage drive, Peechara's NVR email account, and all other sources of electronic corporate information.

62.     Upon his termination, using information that he obtained while at NVR, Peechara has disparaged NVR, and its officers and directors, to representatives of NVR's clients, as well as business leaders and colleagues in the surrounding community.  For example, Peechara told these individuals that he was a majority owner of NVR, that NVR and its officers and directors were depriving him of his shares and ownership in NVR, that NVR had refused to pay him properly, that NVR's officers and directors did not know what they were doing in business, and that their inexperience was harming NVR.

63.     Peechara has never held shares of NVR.

## IV.    PEECHARA'S UNAUTHORIZED USE OF NVR'S COMPUTERS AND MISAPPROPRIATION OF NVR'S TRADE SECRETS

64.     Upon information and belief, while the June 23, 2017 Board of Directors meeting was taking place at NVR's corporate counsel's office, Peechara returned to NVR's office and proceeded to take equipment and documents that belonged to NVR, including but not limited to NVR's corporate seal, NVR's checkbooks, original records of NVR's corporate meeting minutes, NVR's stock certificates, NVR's stock ledger, as well as NVR's original Restated Bylaws and Articles of Incorporation.

65.     Peechara also refused to return to NVR at least two laptop computers and equipment that NVR purchased for his use while he was an employee.

66.     Upon information and belief, Peechara also took, and has refused to return, at least one additional laptop from NVR.

67.     On November 17, 2011, NVR had purchased a Dell Inspiron laptop computer for Peechara's use during his employment.

68.     On May 30, 2017, NVR had purchased a Dell Latitude 7480 laptop computer, service tag number J4514H2, for Peechara's use during his employment.

69.     Both laptops were password protected, and NVR set the login passwords for both laptop computers.  NVR also had administrator privileges for both laptop computers.

70.     Peechara conducted his work for NVR on these two laptop computers from the date of purchase until his termination from NVR on June 23, 2017.

71.     The laptops, therefore, contain NVR's proprietary and confidential information and trade secrets, including but not limited to NVR's customer records, sensitive employment records, business plans, pricing information, client lists and client payment information, client contracts, vendor lists, and other highly sensitive competitive information.  For example, the laptops contain documents and spreadsheets that list NVR's clients, individual pricing and strategy details, specific contract terms, and per-unit profit margins.  The laptops also include documents from 2010 through May 2017 discussing business development opportunities and contacts, proposal drafts, and customer and vendor contracts.  Finally, the laptops include NVR's proprietary and confidential intellectual property related to ALPHA-D! and NVR's technology implementation methodologies.

72.     Despite NVR's ownership of the computers and the information thereon, Peechara has continued to use NVR's laptops without NVR's authorization, and the information contained on them, following his termination.

73.     Peechara has improperly disclosed trade secrets and confidential business and financial information contained on the laptop computers to his wife, who was not entitled to view the trade secrets and confidential information.  Upon information and belief, he has also improperly disclosed trade secrets and confidential business and financial information contained on the laptop computers to other third parties.

74.     Peechara also modified and/or altered NVR's confidential business and financial information and trade secrets.

75.     Peechara has utilized trade secrets contained on the laptop computers to attempt to undermine NVR's business relationships and contracts with several of NVR's clients, including, but not limited to, NVR's public sector clients.

76.     Peechara also disclosed trade secrets contained on the laptops to several colleagues in the Fairfax business community to disparage and undermine NVR's public image and business opportunities.

77.     Consistent with his Employment Agreement, Peechara was instructed to return the laptop computers and NVR's corporate documents and things, by letters from corporate counsel, on June 23, 2017, August 22, 2017, and September 6, 2018.  Peechara has failed to return to NVR the laptops or corporate documents and things.

78.     Peechara was again instructed to return the laptop computers and NVR's corporate documents and things, by letters from undersigned counsel, on December 28, 2018, January 14, 2019, January 24, 2019, and February 6, 2019.  To date, Peechara has returned only

NVR's corporate checkbooks, and he has refused to acknowledge NVR's ownership of the laptop computers or to return NVR's corporate documents and things.

### COUNT I: COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030(g)

79.     NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

80.     NVR provides IT services for a variety of clients in industries across the United States.

81.     NVR's laptop computers, therefore, are "protected computers" under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(e)(2), because they are computers used in or affecting interstate or foreign commerce or communication.

82.     Following his termination from NVR, Peechara was not authorized to access NVR's laptop computers or electronic files.

83.     Nonetheless, Peechara knowingly and intentionally accessed NVR's laptop computers without authorization and thereby obtained information from those computers, in violation of 18 U.S.C. § 1030(a)(2)(C).

84.     Peechara also knowingly and with intent to defraud accessed NVR's laptop computers without authorization, or exceeded authorized access, and obtained information from the laptop computers, which Peechara used to further a fraud and obtain something of value, in violation of 18 U.S.C. § 1030(a)(4).

85.     Further, Peechara intentionally accessed NVR's laptop computers without authorization and, as a result of such conduct, caused damage and loss, in violation of 18 U.S.C. § 1030(a)(5)(C).

86.     As a result of Peechara's unlawful conduct, NVR has suffered damages, including the interference with clients and business contacts, and the loss of proprietary and confidential information and trade secrets worth tens of thousands of dollars, if not more.

87.     NVR, therefore, is entitled to compensatory damages in an amount to be determined at trial and such other and further relief as this Court deems appropriate.

### COUNT II: DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836(b)(1)

88.     NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

89.     NVR provides IT services for a variety of clients in industries across the United States.

90.     NVR's trade secrets, therefore, are related to a product or service used in, or intended for use in, interstate or foreign commerce.

91.     Peechara misappropriated NVR's confidential information and trade secrets, contained on NVR's laptop computers, including but not limited to NVR's customer records, sensitive employment records, business plans, pricing information, client lists and client payment information, client contracts, vendor lists, and other highly sensitive competitive information.

92.     The information that Peechara misappropriated constitutes trade secrets because it includes financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes. *See* 18 U.S.C. § 1839(3).

93.     NVR is the owner of the trade secrets misappropriated by Peechara because NVR has a rightful legal or equitable title to, or license in, the trade secrets and the laptop computers on which they were kept. *See* 18 U.S.C. § 1839(4).

94.     The trade secrets stolen by Peechara derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. *See* 18 U.S.C. § 1839(3).  For example, the laptops contain documents and spreadsheets that list NVR's clients, individual pricing and strategy details, specific contract terms, and per-unit profit margins.  The laptops also include documents from 2010 through May 2017 discussing business development opportunities and contacts, proposal drafts, and customer and vendor contracts.  Finally, the laptops include NVR's proprietary and confidential intellectual property related to ALPHA-D! and NVR's technology implementation methodologies.

95.     The information and trade secrets misappropriated by Peechara were at all times the subject of reasonable efforts by NVR to maintain its secrecy, including confidentiality requirements in Peechara's Employment Agreement and the NVR Employee Handbook. *See* 18 U.S.C. § 1839(3).

96.     Peechara misappropriated NVR's trade secrets because Peechara copied, disclosed, modified, altered, and used NVR's trade secrets without NVR's express or implied consent, and Peechara used improper means to acquire the trade secrets and owed a duty to NVR to maintain the secrecy of the trade secrets or limit the use of the trade secrets. *See* 18 U.S.C. § 1839(5).  The improper means utilized by Peechara in acquiring the trade secrets include, but are not limited to, theft, misrepresentation, and breach of a duty to maintain secrecy. *See* 18 U.S.C. § 1839(6).

97.     As a direct result of Peechara's misappropriation of NVR's trade secrets, NVR

has been damaged and is entitled to an award of damages to be determined at trial and such other

and further relief as this Court deems appropriate.

98.     Peechara willfully and maliciously misappropriated NVR's trade secrets, and

NVR is therefore entitled to exemplary damages, in an amount of two times the award for

misappropriation, and attorneys' fees. *See* 18 U.S.C. § 1836(b)(3)(C) and (D).

## COUNT III: CONVERSION OF NVR'S LAPTOPS AND CONFIDENTIAL INFORMATION

99.     NVR repeats and realleges each and every allegation set forth in the foregoing

paragraphs, as though fully set forth herein.

100.    NVR purchased at least two laptops computers for Peechara's use while he was

an employee at NVR: a Dell Inspiron laptop computer in 2011, and a Dell Latitude 7480

computer, service tag number J4514H2, in 2017.

101.    During his employment, Peechara used those two laptop computers for his work

at NVR and, as a result, the computers contain NVR's confidential and proprietary information.

102.    NVR is the owner of property rights in and to those two laptop computers, as well

as to the confidential and proprietary information contained on those two laptop computers.

103.    After his termination from NVR, Peechara wrongfully took control of at least

those two laptops and the confidential and proprietary information contained on the laptops, and

he has refused to return the laptops or the information to NVR.

104.    Peechara's wrongful exercise of dominion and control over the laptops and

NVR's confidential and proprietary information deprives NVR of use and control of those items,

in violation of NVR's rights in and to those items.

105.    As a result of Peechara's conversion and use of NVR's laptop computers, NVR has been damaged.

106.    NVR is therefore entitled to damages, in an amount to be determined at trial and such other and further relief as this Court deems appropriate.

### COUNT IV: CONVERSION OF CORPORATE DOCUMENTS AND THINGS

107.    NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

108.    After his termination from NVR, Peechara wrongfully took control of NVR's corporate seal, NVR's checkbooks, original records of NVR's corporate meeting minutes, NVR's stock certificates, NVR's stock ledger, as well as NVR's original Restated Bylaws and Articles of Incorporation.  He has refused to return most of these items to NVR.[2]

109.    NVR is the owner of property rights in and to its corporate items, documents, records, and stock records list above.

110.    Peechara's wrongful exercise of dominion and control over NVR's corporate records, documents, and things, as well as NVR's stock certificates and ledger, deprives NVR of use and control of those items, in violation of NVR's rights in and to those items.

111.    As a result of Peechara's conversion of NVR's corporate records, documents, and things, and stock records, NVR has been damaged.

112.    NVR is therefore entitled to damages, in an amount to be determined at trial and such other and further relief as this Court deems appropriate.

---

[2] Peechara's counsel has returned to NVR three of the corporate checkbooks that Peechara stole in 2017.

Case 1:19-cv-00189-CMH-TCB Document 1 Filed 02/15/19 Page 18 of 26 PageID# 18

## COUNT V: CONVERSION OF CORPORATE FUNDS

113.    NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

114.    Peechara misappropriated $500,000.00 from NVR's corporate accounts without NVR's knowledge or consent.

115.    NVR provides IT services to its clients in exchange for monetary payment.

116.    NVR is the owner of property rights in and to the money, in the form of checks, cash, and funds, paid to NVR in exchange for its IT services.

117.    Peechara wrongfully exercised or assumed authority over the property of NVR—namely, monetary funds received from NVR's clients—by knowingly causing the deposit of checks made out to NVR into a secondary NVR corporate account, writing a $500,000.00 check from the secondary NVR corporate account to Acumen Tech, a company in which Peechara owned a majority interest, and endorsing and depositing the $500,000.00 check on behalf of Acumen Tech for the purpose of obtaining and benefitting from the $500,000.00.

118.    As a result of Peechara's wrongful exercise or assumption of authority over the NVR's funds, NVR was deprived of possession of its property and the use of those monetary funds.

119.    As a proximate and direct result of Peechara's wrongful exercise or assumption of authority over the property of NVR, NVR was damaged.

120.    NVR is therefore entitled to damages in the amount of $500,000.00, plus interest, and such other and further relief as this Court deems appropriate.

## COUNT VI: FRAUD

121.    NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

122.    In general, NVR's officers and directors were not specifically aware of payment obligations unless they were notified of them by the NVR accounting department.  Peechara had unique knowledge of NVR's payment obligations based on his role as President.

123.    NVR, via its officers and directors, relied on Peechara to conduct the operations of the company and to act in its best interest.

124.    Specifically, NVR, via its officers and directors, relied on Peechara's conduct, as well as their understandings of Peechara's duty of loyalty and his fiduciary duty, as an implicit representation that payment checks from clients were being gathered in the usual course of business, that those checks were being deposited into NVR's primary corporate account in the regular course of business, and that Peechara would not use corporate funds to pay himself money that he was not owed.

125.    Peechara intentionally and knowingly concealed from the other officers and directors his withholding of checks from clients, his depositing of said checks into NVR's secondary corporate bank account, and his use of the deposited funds to pay $500,000.00 to himself, via his ownership in Acumen Tech.

126.    Peechara also intentionally and knowingly created phony invoices from Acumen Tech to allow him to launder NVR's funds through that shell company before using those funds to pay the Bhoomi mortgage.

127.    These facts were material and, had the other officers and directors known of Peechara's conduct, they would have stopped or prevented those actions on behalf of NVR.

128.    Peechara intentionally and knowingly concealed his actions from NVR, with the

19

intent to mislead.

129.    Peechara's actions as alleged in this Count were willful or wanton and evince a conscious disregard for the rights of others.

130.    As a result of its reliance on and trust in Peechara, via its officers and Directors, NVR incurred, and is entitled to, damages, including, but not limited to, $500,000.00, plus interest and such other and further relief as this Court deems appropriate.

131.    Further, because Peechara's actions were willful or wanton and evince a conscious disregard for the rights of others, NVR is entitled to punitive damages, in the amount of $350,000.00.

**COUNT VII: UNJUST ENRICHMENT**

132.    NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, with the exception of paragraphs 1–14 and 30–131.

133.    Among other things and as described above, Peechara misappropriated $500,000.00 from NVR for his own benefit.

134.    Peechara wrongfully derived substantial benefits from his misappropriation of NVR's funds.

135.    Peechara was not entitled to the $500,000.00 that he improperly paid to himself, through Acumen Tech, and he has unjustly retained the misappropriated funds.

136.    Peechara has thus been unjustly enriched at NVR's expense.

137.    NVR, therefore, is entitled to restitution from Peechara in the amount of $500,000.00, plus interest, and such other and further relief as this Court deems appropriate.

**COUNT VIII: BREACH OF CONTRACT**

138.    NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

20

139.    The Employment Agreement is a valid and enforceable contract between NVR and Peechara.

140.    As set forth herein, the Employment Agreement restricted Peechara from "render[ing] or perform[ing] services for any other corporation, firm, entity or person which are inconsistent with the provisions of [the Employment Agreement]." Employment Agreement § 2.2.

141.    The Employment Agreement prohibited Peechara from "directly or indirectly, disclos[ing], divulge[ing], reveal[ing], report[ing], publish[ing], transfer[ing], copy[ing], duplicat[ing] or us[ing], for any purpose whatsoever, any of such information which has been obtained by or disclosed to [Peechara] as a result of [Peechara's] employment by [NVR]." Employment Agreement § 4.1(a).

142.    The Employment Agreement also prohibited Peechara from taking action or making statements, publicly, privately, in writing, or in the media "disparaging [NVR] or its members, officers, or its products or services." Employment Agreement § 10.6.

143.    NVR has at all times performed and fulfilled its obligations under the Employment Agreement.

144.    Peechara breached his obligations under the Employment Agreement by managing, directing, owning, or performing services for at least Acumen Tech and Bhoomi in a way that was inconsistent with his obligations under the Employment Agreement.

145.    Peechara breached and continues to breach his obligations under the Employment Agreement by, directly or indirectly, disclosing, revealing, transferring, copying, or using information obtained by or disclosed to Peechara as a result of his employment by NVR.

146.     Peechara breached and continues to breach his obligations under the Employment Agreement by disparaging NVR, its members, officers, or its products or services to business contacts within the community, NVR's clients and customers, as well as potential clients and customers.

147.     As a proximate result of Peechara's breach of the Employment Agreement, NVR has suffered, and is continuing to suffer, irreparable harm and loss of its confidential information and competitive advantage and goodwill in the marketplace.

148.     NVR is therefore entitled to damages incurred as a result of Peechara's breach, as well as all remedies provided by the Employment Agreement, including but not limited to (a) a refund of all compensation for bonuses and one-half of all compensation paid to Peechara, (b) benefits and taxes incurred by NVR associated with such payments, (c) reasonable attorneys' fees and costs, and (d) any other remedy the court finds appropriate.

### COUNT IX: BREACH OF FIDUCIARY DUTY

149.     NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

150.     Peechara became an officer of NVR as of July 1, 2010.  Peechara was also elected to serve as a member of NVR's Board of Directors on July 1, 2010.

151.      In becoming NVR's Vice President of Operations and President, Peechara undertook and assumed responsibilities, duties, and obligations on behalf of and to NVR, including without limitation, duties of loyalty, care, fidelity, good faith, and to act in the best interests of NVR.

152.     As NVR's President, Peechara owed fiduciary duties to NVR to exercise due care in the company's management and to act in the best interests of NVR.

153.     Peechara's fiduciary duties included, without limitation, the duty to: (a) act in a

manner that was loyal to NVR and its best interests; (b) not act adversely to NVR's interests; and (c) not to compete against the interests of NVR at least so long as he remained its officer and an employee.

154.    Peechara breached his duties to NVR by engaging in the acts described in this Complaint, including but not limited to: (a) utilizing trade secret, confidential, and proprietary information of NVR for his own benefit and to the detriment and injury of NVR, (b) misdirecting client payments and misappropriating $500,000.00 from NVR's corporate account for his own benefit. These actions were intentional, wanton and willful, and done with the intent to harm NVR.

155.    As a direct and proximate result of these breaches of duty and willful misconduct, NVR has suffered and will continue to suffer financially, and be damaged in numerous ways, including damages to its reputation, and current and prospective relationships, interference with and misappropriation of its trade secrets, contracts, and other property interests.

156.    NVR is entitled to damages including, but not limited to, $500,000.00, plus interest, and such other and further relief as this Court deems appropriate.

157.    Further, because Peechara's actions were willful or wanton and evince a conscious disregard for the rights of others, NVR is entitled to punitive damages, in the amount of $350,000.00.

**COUNT X: VIRGINIA STATUTORY BUSINESS CONSPIRACY, VA. CODE 18.2-499**

158.    NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

159.    Peechara, Bhoomi, and Acumen Tech entered into agreements and/or understandings, and otherwise conspired together and with others to injure NVR, in violation of Va. Code § 18.2-499(A), by (a) misappropriating $500,000.00 of NVR's corporate funds, (b)

23

fraudulently obtaining $500,000.00, and (c) breaching Peechara's fiduciary duty to NVR as its President.

160.   Peechara, Bhoomi, and Acumen Tech conspired together and with others for the purpose of willfully and maliciously injuring NVR in its trade and business.

161.   As a direct and proximate result of said business conspiracy, NVR has been injured, is threatened with injury, and has been injured irreparably.

162.   As a result, NVR is entitled to treble compensatory damages, costs, and attorneys' fees, as permitted by Va. Cod. § 18.2-499 and 500, and such other and further relief as this Court deems appropriate

### COUNT XI: COMMON-LAW CONSPIRACY

163.   NVR repeats and realleges each and every allegation set forth in the foregoing paragraphs, as though fully set forth herein.

164.   Peechara, Bhoomi, and Acumen Tech entered into agreements and/or understandings, and otherwise conspired together and with others to injure NVR, in violation of Va. Code § 18.2-499(A), by (a) misappropriating $500,000.00 of NVR's corporate funds, (b) fraudulently obtaining $500,000.00, and (c) breaching Peechara's fiduciary duty to NVR as its President.

165.   As a direct and proximate result of the tortious acts committed in furtherance of the conspiracy between Peechara, Bhoomi, and Acumen Tech, and others acting with them or on their behalf, NVR was damaged.

166.   NVR, therefore, is entitled to damages to be determined at trial and to such other and further relief as this Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff NVR respectfully requests that the Court enter judgment against Peechara and grant the following relief:

(a)     An award of compensatory damages against Peechara for $500,000.00, plus interest;

(b)     An award of additional compensatory damages against Peechara, in an amount to be proven at trial;

(c)     Exemplary damages, in an amount of two times the award for misappropriation, and attorneys' fees, as permitted by 18 U.S.C. § 1836(b)(3)(C) and (D).

(d)     Exemplary or punitive damages for fraud and breach of fiduciary duty in an amount of $350,000.00, as permitted by Va. Code § 8.01-38.1.

(e)     Refund of all compensation for bonuses and one-half of all compensation paid to Peechara, benefits and taxes incurred by NVR associated with such payments, and reasonable attorneys' fees and costs, as permitted by the Employment Agreement.

(f)     Treble the compensatory damages awarded, as permitted by Va. Code § 18.2-499 and 500.

(g)     An award of reasonable attorneys' fees, costs, expenses, and pre-judgment and post-judgment interest to NVR to the extent permitted by law or contract; and

(h)     Such other and further relief as this Court deems just and proper.

Dated: February 15, 2019                NETVISION RESOURCES, INC.
                                        By counsel,


                                        _____
                                        Attison L. Barnes, III (VSB No. 30458)
                                        Stephen J. Obermeier (VSB No. 89849)
                                        Krystal B. Swendsboe (VSB No. 89614)

Wiley Rein LLP
1776 K Street NW
Washington, DC  20006
Tel: (202) 719-7000
Fax: (202) 719-7049
abarnes@wileyrein.com
sobermeier@wileyrein.com
kswendsboe@wileyrein.com

*Counsel for Plaintiff NetVision Resources, Inc.*